# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| DAVID ZIELINSKI, | ) | CASE NO. 3:17CV1569 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| JOHN COLEMAN, Warden | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |

This matter has been referred to the undersigned United States Magistrate Judge for preparation of a Report and Recommendation pursuant to Local Rule 72.2(b)(2).  Before the Court is the Petition of David Zielinski ("Zielinski" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Zielinski is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Zielinski*, Lucas County Court of Common Pleas Case No. CR 201302235.

Before the Court is Respondent's Motion to Dismiss.  (Doc No. 6.)  For the reasons that follow, it is recommended that Respondent's Motion be GRANTED and the Petition be DISMISSED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Zielinski's conviction as follows:

> {¶ 6} It is undisputed that the victim, Michael Jackson, was shot, stabbed and pistol-whipped while in bed with appellant's estranged wife, Amber Hayes, in the home appellant and Hayes had shared after their marriage and before their separation. Appellant and Hayes had married on June 7, 2013. At that time, Hayes bought a house on Central Avenue in Toledo where the couple then lived. On June 25, 2013, the couple argued and appellant left to stay with his mother in Swanton, Ohio. Appellant did not stay at the house again. Shortly after appellant moved out, Hayes began a relationship with Jackson. Appellant was aware of the relationship.

> {¶ 7} Hayes testified that at approximately 2:00 a.m. on July 14, 2013, she and Jackson returned to the Central Avenue house after socializing with friends elsewhere. Shortly after arriving at the house, they went to bed together. Hayes testified that she and Jackson were in bed when she heard a noise on the stairs to the second floor where the bedroom was located. Hayes then looked up and saw appellant standing by the bed. She testified that appellant leaned over her and stretched his arm toward Jackson. Hayes heard four or five gunshots in rapid succession and saw Jackson try to sit up. Jackson was holding his stomach and moaning. Appellant hit Hayes in the face and on the back of her head. He then pointed his gun at her while forcing her to walk down the stairs and out of the house. Appellant told Hayes to back out of the driveway, but as she was backing up he told her to stop because he had left his knife in the house. Appellant made Hayes go back upstairs, where she saw Jackson lying motionless in the bedroom. Appellant then hit Jackson in the head twice. Appellant and Hayes left the house again and appellant told Hayes to drive him to his truck. When appellant got out of the car and walked to the truck, Hayes backed up and sped away. Appellant fired several shots into her car as she drove away. Hayes called 911 and eventually was taken to the hospital where she was treated for bruises, cuts and glass embedded in her legs.

> {¶ 8} Appellant's friend Paul Cook testified that on the night of July 13, 2013, he and appellant were drinking together in Swanton when appellant said he was going to beat up the man his wife was sleeping with. Cook rode along, and when appellant stopped the truck he told Cook to wait there. Appellant got out, smoked a cigarette and walked away carrying a rope, a gun and a knife. After appellant left, Cook called his mother, who picked him up.

{¶ 9} Appellant testified that on the night of July 13, 2013, he was at his mother's home in Swanton talking to Paul Cook. Eventually, appellant decided to go to Toledo and confront Jackson, whom appellant knew was involved in a relationship with Hayes. Appellant testified that he took a gun and a knife in order to protect himself because he did not know "what might happen" when he went into the house. He denied intending to kill Jackson when he got there. He stated that he wanted to get Jackson out of the house and try to work something out with his wife. Appellant parked his truck around the corner from the house so that Hayes would not hear him pull up since she had said that if he came to the house she would call the police. He further testified that after he parked he smoked a cigarette and began to sober up. He testified that, out of concern for Cook's safety, he told Cook to call his mother for a ride because he did not know what might happen when he went into the house. Appellant walked to Hayes' house alone. Contrary to Cook's testimony, appellant denied taking a rope with him.

{¶ 10} Appellant unsuccessfully tried to open two of the doors with his key. He claimed that he knocked on the front door but there was no answer. Appellant saw an open window on the first floor and removed a fan set in the window so that he could climb in. He testified that, once inside, he could hear Hayes and Jackson having intercourse. He waited until they were quiet, "trying to keep it together," before going upstairs, where he found them in bed together. Appellant testified that Jackson called him a name and they began to struggle. Appellant stated he gave Jackson "a poke" in the leg with his knife. (The coroner's report indicated that Jackson suffered a 4.5–inch deep stab wound in his leg as well as 1.5–inch wound in the buttock area.) Jackson then turned the knife toward appellant and stabbed him in the leg. Appellant testified that he then "became unglued in there," shot Jackson multiple times, and "pistol whipped" him after he was dead.

*State v. Zielinski,* 2016 WL 1615434 at *1-3 (Ohio App. 6th Dist. April 22, 2016).

## II. Procedural History

**A.    Trial Court Proceedings**

In July 2013, a Lucas County Grand Jury charged Zielinski with (1) one count of

aggravated murder in violation of Ohio Rev. Code ("O.R.C.") §2903.01(A) and (F) (Count One);

(2) one count of aggravated burglary in violation of O.R.C. §2911.11(A)(2) (Count Two); (3)

one count of kidnapping in violation of O.R.C. §2905.01(B)(1) and (C) (Count Three); and (4)

3

one count of attempt to commit murder in violation of O.R.C. §2923.02 (Count Four).  (Doc. No. 6-1, Exh. 1.)  All charges carried firearm specifications.  (*Id*.)  Zielinski pled not guilty to all Counts.  (Doc. No. 6-1, Exh. 13.)

The case proceeded to a jury  trial commencing April 28, 2014.[1]  (Doc. No. 6-2, Tr. 1.) Pursuant to Ohio. Crim. R. 29, Zielinski moved for an acquittal at the close of the State's case, which the trial court denied.  (Doc. No. 6-4, Tr. 51.)  Zielinski renewed his Ohio Crim. R. 29 Motion for Acquittal after the defense rested and the state trial court again denied the motion. (*Id*. at Tr. 160.)  On May 2, 2013, the jury returned its verdict, finding Zielinski guilty of the lesser offense of murder, aggravated burglary, kidnapping, and the lesser offense of felonious assault, with firearm specifications attached to each offense.  (Doc. No. 6-1, Exh. 3.)  The jury found Zielinski not guilty of attempt to commit murder.  (*Id*.)

The trial court conducted a sentencing hearing on May 6, 2014, at which time Zielinski was sentenced to 15 years to life for murder, 11 years for aggravated burglary, 11 years for kidnapping, and 8 years for felonious assault, to be served consecutively.  (Doc. No. 6-1, Exh. 5.)  The trial court also ordered four 3-year terms for the firearm specifications, each to be served consecutively.  (*Id*.)  The aggregate sentence was 57 years to life in prison.  (*Id*.)

On May 19, 2014, the trial court entered a *nunc pro tunc* entry to reflect the kidnapping charge was a felony of the first degree. (Doc. No. 6-1, Exh. 6.)

---

[1]     On April 29, 2014, Zielinski filed a motion requesting a jury instruction on voluntary manslaughter as a lesser included offense of aggravated murder and on aggravated assault as a lesser included offense of attempted murder.  (Doc. No. 6-1, Exh. 2.)  The state trial court declined to provide a voluntary manslaughter instruction, but did agree to an instruction on felonious assault as a lesser offense for attempted murder.  (Doc. No. 6-5, Tr. 2-11.)

4

**B.      Direct Appeal**

On May 15, 2014, Zielinski, through counsel, filed a Notice of Appeal with the Court of Appeals for the Sixth Appellate District ("state appellate court").  (Doc. No. 6-1, Exh. 7.)  In his appellate brief, Zielinski raised the following assignments of error:

I.     Appellant was denied due process and a fair trial by the trial court's refusal to instruct the jury as to voluntary manslaughter.

II.    Appellant was denied due process after the state provided legally insufficient evidence to sustain appellant's conviction for aggravated burglary.

III.   The trial court erred when it refused to merge firearm specifications which arose out of a single transaction.

(Doc. No. 6-1, Exh. 9.)  The State filed a brief in response.  (Doc. No. 6-1, Exh. 10.)

On April 22, 2016, the state appellate court affirmed Zielinski's convictions and prison sentences.  (Doc. No. 6-1, Exh. 12.)  *See also State v. Zielinski,* 2016 WL 1615434 (Ohio App. 6th Dist. April 22, 2016).

Zielinski did not successfully file an appeal with the Supreme Court of Ohio.  It appears Zielinski did attempt to submit an appeal, but on May 16, 2016, the Supreme Court of Ohio informed Zielinski his appeal was not filed as he did not include a "date stamped copy of the court of appeals' opinion and judgment entry."  (Doc. No. 7-1 at 1.)  The Supreme Court of Ohio advised Zielinski June 6, 2016 was the deadline to correctly submit an appeal.  (*Id.*)

Zielinski again attempted to file an appeal with the Supreme Court of Ohio. However, on June 6, 2016, the Supreme Court of Ohio informed him his appeal was still not filed, as he "did not attach a **complete** date-stamped copy of your court of appeals' decision to your

5

memorandum in support of jurisdiction."  (Doc. No. 7-1 at 3.)  The Supreme Court of Ohio

advised Zielinski of the procedure for filing a delayed appeal.  (*Id.*)

Zielinski submitted a letter to the state appellate court on June 17, 2016, requesting a file-

stamped copy of the final opinion and order in his case.  (Doc. No. 7-2 at 2.)  The state appellate

court provided the opinion to him on June 23, 2016.  (*Id.*)  Zielinski did not attempt to file a

delayed appeal with the Supreme Court of Ohio.

**E.**     **Federal Habeas Petition**

On July 19, 2017,[2] Zielinski, proceeding *pro se*, filed a Petition for Writ of Habeas

Corpus and asserted the following grounds for relief:

> **Ground One**: Appellant's trial counsel requested that the trial court charge the
> jury as to voluntary manslaughter.  The trial court refused stating that finding
> your spouse in bed with another person does not justify a voluntary manslaughter
> instruction.  A criminal defendant is entitled to have a jury be given complete and
> accurate instructions on all the issues of law raised by the evidence.  Voluntary
> manslaughter is an inferior degree and offense to murder, instead of a lessor-
> included offense since it requires additional mitigating elements.  A jury must be
> instructed on a lessor-included (or inferior degree) offense when evidence is
> admitted that would allow a reasonable jury to reject the greater offense and find
> the defendant guilty of a lessor included offense.  Specifically, a defendant
> charged with murder is entitled for the jury to be instructed as to voluntary
> manslaughter when the evidence admitted a trial could reasonably support both
> an acquittal on the charge of murder and a conviction for voluntary manslaughter.
> When evaluating whether to instruct the jury as to voluntary manslaughter, a trial
> court must evaluate the evidence in a light more favorable to the defendant,
> without weighing the persuasiveness of the evidence.  The issue therefore is
> whether the evidence admitted at trial could have allowed the jury to reject the
> aggravated murder charge and find appellant guilty of voluntary manslaughter.  If

---

[2]     Under the mailbox rule, the filing date for a *pro se* petition is the date that a
petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266
(1988).  While the Petition did not arrive at the Court for filing until July 27,
2017, Zielinski states he placed it in the prison mailing system on July 19, 2017.
(Doc. No. 1 at 18.)  Thus, the Court will consider the Petition as filed on July 19,
2017.

answered in the affirmative, appellant was entitled to voluntary manslaughter instruction for the jury.  When analyzing whether there was a "reasonable sufficient" provocation to warrant a voluntary manslaughter instruction, an objective standard is used.  For provocation to be objectively reasonably sufficient it must be of a degree that would be sufficient to arouse the passion of an ordinary person beyond their control.  Discovering a spouse in the act of adultery "as is the case here" is one or[sic] the certain types of situations that have been regarded as particularly appropriate in which voluntary manslaughter instructions are often given when murder charges are brought.

**Ground Two**: The evidence presented as to appellant's conviction for aggravated burglary was legally inadequate since appellant did not trespass.  It is true that a spouse may be criminally liable for burglary in the dwelling of another spouse who is exercising or control over the dwelling.  Appellant entered the marital home in the early morning of July 14, 2013.  It is undisputed that there was civil protection order or other court order prohibiting appellant from entering the residence, nor appellant or his wife filed for a divorce.  It would be illogical for appellant's conviction to aggravated burglary to be sustained in light of the evidence when there does not exist any evidence to the contrary to support Hayes' exclusive use of the residence, purchased by appellant, and when there had not been a legal filing for divorce on the part of either party.

**Ground Three**: The trial court sentenced appellant to four (4) three year firearm specifications as to the murder, aggravated burglary, kidnapping, and felonious assault charges.  All four of the charges and firearm specifications are statutorily required to be served consecutive to each underlying charge.  The trial court rejected appellant's argument that the four firearm specifications should merge together by finding that the charges were not committed in a single transaction.  Only a three year mandatory prison sentence may be imposed in addition to the underlying crime when a defendant possesses a firearm while committing an offense and displays, brandishes, indicates possession, or use the firearm.  However, a court is prohibited from imposing multiple prison sentences for firearm specifications for felonies committed as a single act or transaction.  The four (4) felonies of offenses that appellant was convicted of all arose out of a single transaction.  The fact that there were two (2) victims does not prevent a finding that appellant's actions were part of a single transaction.  The offenses were bound together by time and space.  The time between the offenses began when appellant entered the residence and when the offense ended was when appellant entered his vehicle to leave.  The space in which these offenses occurred was small, only consisting of residence and around the block where appellant had parked his truck.

Later on his Petition, Zielinski raises a fourth ground for relief, acknowledging it

7

had not been presented to the state courts. This ground for relief reads as follows:

> Petitioner was represented by public counsel.  Bias judge. Counsel for defendant would not file for change of judge based upon the prejudicial errors committed during trial with regard to unlawful evidence that was improperly admitted by the judge; ineffective assistance of trial counsel.  Trial counsel failed to object to the introduction of inadmissable evidence into the record, and failed to object to the court's failure to give the jury to proper jury instructions with regard to the evidence shown to the jury, and the evidence not permitted to be shown or introduced contrary to the laws for evidence, and also, for the failure of counsel not objecting or cross examining the witnesses and/or challenging statements that infer that defendant was a stalker, nor did counsel provide the documentary evidence that proved beyond a reasonable doubt that defendant's spouse had been in contact with him prior to the date of the incident, as well as, providing material evidence that defendant's spouse had given false/perjurious testimony stating that she had legally separated from defendant and had no contact and/or communication with defendant but documents demonstrate that she had unlawfully hacked into defendant's account and provided false information to other friends and contacts to create problems for defendant without his knowledge.  Moreover, that trial counsel failed to object to defendant's spouse narration of events in regard to the specific acts leading to the murder, and the scientific analysis that showed victim was under the influence of drugs, was not shot in his sleep, etc., however, this inadmissable evidence was allowed to enter into the record without challenge by trial counsel.

Zielinkski provided the following explanation regarding his appeal to the Supreme

Court of Ohio:

> Appellant filed his Notice of Appeal to the Ohio Supreme Court and it was rejected on May 16, 2016.  Appellant then refiled the documents to the Ohio Supreme Court and were again denied and rejected because the lower court's decision was not time stamped and dated by the court.  Appellant then informed the appellate court that they did not provide a time stamp dated decision, and thus, the Ohio Supreme Court would not accept jurisdiction of the criminal appeal to the highest state court because the record was therefore incomplete and therefore returned to the *pro se* defendant and denied.  Additionally, appellant's sentence is a void sentence in violation of the allied offenses statute, and the state's statutes for imposing multiple sentences for firearm specifications arising out of a single incident and event.

(Doc. No. 1.)

8

Respondent filed a Motion to Dismiss on September 18, 2017.  (Doc. No. 6.)  Zielinski

filed a Response on October 16, 2017.  (Doc. No. 7.)

### III. Law and Argument – Statute of Limitations

**A.      One-Year Limitation Under AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a

one-year limitations period in a habeas action brought by a person in custody pursuant to the

judgment of a State court.  Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the

latest of--

> (A) the date on which the judgment became final by the conclusion of direct
> review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State
> action in violation of the Constitution or laws of the United States is removed, if
> the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by
> the Supreme Court, if the right has been newly recognized by the Supreme Court
> and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could
> have been discovered through the exercise of due diligence.

Subsections (A) and (D) are relevant to this Petition and will be discussed below.[3]

**B.      20 U.S.C. §2244(d)(1)(D) – Factual Predicate**

While Zielinski does not specifically invoke 20 U.S.C. §2244(d)(1)(D), he contends that,

in relation to his ineffective assistance of counsel claim, he could not have "discovered the

factual predicate of these claims."  (Doc. No. 7 at 4.)  Zielinski alleges his attorney "withheld

---

[3]      Zielinski does not argue the limitations period should commence at a later date
for any of the reasons set forth in §§2244(d)(1)(B)-(C).

critical material evidence" from him, which would have "clearly changed the outcome of the jury trial."  (*Id*. at 3, 4.)  This evidence consists of ongoing Facebook communications from his ex-wife, as well as evidence his ex-wife had "hacked" into his Facebook account and changed his account password.  (*Id*. at 3.)  Zielinski further asserts his trial counsel withheld "the DNA evidence that demonstrated that both the victim and Petitioner's blood was present on the knife," thus supporting his claim his stab wound was not self-inflicted.  (*Id*. at 4.)  Respondent does not directly address these arguments, beyond asserting "the underlying factual predicate of these claims was discovered by Zielinski[] before the conclusion of direct review in the state court." (Doc. No. 6 at 11.)

Pursuant to §2244(d)(1)(D), the statute of limitations may commence later than the date upon which a petitioner's conviction and sentence becomes final if the petitioner demonstrates a later date wherein he could have discovered the factual predicate of his claims through the exercise of due diligence.  However, the "critical determination" is not when a petitioner could have discovered the legal basis or all the evidence supporting the claim, but merely the factual predicate.  *Gorospe v. Smith,* 2011 WL 4431091 at *4 (N.D. Ohio Sept. 22, 2011).  Moreover, it is the petitioner who "bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim."  *DiCenzi v. Rose,* 452 F.3d 465, 471 (6th Cir. 2006).  *See also Bey v. Capello*, 525 Fed. App'x 405, 408 (6th Cir. May 10, 2013).

Specific to ineffective assistance of counsel claims, when calculating the statute of limitations under §2244(d)(1)(D), the clock begins to run "when the prisoner learned facts that supported a good faith basis for arguing prejudice arising from ineffective assistance of counsel,

not when the prisoner understood the legal significance of the facts known to him." *Gorospe,* 2011 WL 4431091 at *6 (citing *Hasan v. Galaza,* 254 F.3d 1150 (9th Cir. 2001).).

As noted *supra*, Zielinski bears the burden of proving he exercised due diligence in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claims. *See DiCenzi*, 452 F.3d at 471. However, to the extent Zielinski even raises an argument for factual predicate, he does not provide the Court with the date in which he learned of this "newly discovered evidence" which forms the basis of his ineffective assistance of counsel claim. (*See* Doc. No. 7 at 3, 4.) Thus, it is unclear as to what date Zielinski is asserting the statute of limitations should have began to run under §2244(d)(1)(D).

Regardless, the Court finds a petitioner in Zielinski's position, acting with due diligence for AEDPA statutory purposes, would have discovered the factual predicate underlying his ineffective assistance of counsel claim prior to filing his direct appeal. In respect to Zielinski's arguments regarding his Facebook account, a review of the trial transcript indicates Zielinski specifically references Facebook during his testimony, explaining it was possibly through Facebook he discovered his ex-wife had developed a relationship with the victim. (Doc. No. 6-4 at 81, 82.) Moreover, as it is Zielinski's Facebook account, he could have easily discovered the communications from his ex-wife via Facebook. He also would have been the most obvious individual to notice his Facebook account password had been changed and his ex-wife was sending messages through his account. (*See* Doc. No. 7 at 3.) Zielinski gives no explanation how his attorney, who is not the owner of the account, "withheld" this evidence from him. (*Id.* at 3.) As such evidence was within Zielinski's control, the Court finds that with due diligence, Zielinski should have discovered this evidence prior to the filing of his direct appeal.

As for Zielinski's arguments regarding the DNA evidence, a review of the trial transcript reveals  the State presented testimony from a Bureau of Criminal Investigation scientist who confirmed the "DNA profile from the blade of the knife was a mixture consistent with contribution from Michael Jackson and David Zielinski."  (Doc. No. 6-3 at Tr. 200.)  Thus, Zielinski should have been aware of the basis for his ineffective assistance of counsel claim in respect to this evidence at the time of the trial.  Moreover, Zielinski does not provide the Court with any explanation as to why he could not have discovered the factual predicate underlying his claim prior to his conviction and sentence becoming final.  *See Bey*, 525 Fed. App'x at 408 (finding a petitioner did not meet his burden of showing due diligence when he did not provide "any reason to suppose that he not only did not but *could not* have discovered" the factual predicate underlying his claim.).

As the limitation period under § 2244(d)(1)(D) begins when the prisoner knows (or through diligence could discover) the important facts, Zielinski cannot seek refuge under this provision.  *See Townsend v. Lafler,* 99 Fed.App'x 606, 608 (6th Cir. May 14, 2004).  He was aware, or should have been aware, of the factual predicate underlying his ineffective assistance of counsel claim prior to his conviction and sentence becoming final.

**C.    20 U.S.C. §2244(d)(1)(A) - Conclusion of Direct Review**

As the factual predicate provision under §2244 (d)(1)(D) is not applicable, the Court finds § 2244(d)(1)(A) is the appropriate provision for calculating the statute of limitations.  Pursuant to § 2244(d)(1)(A), the AEDPA's one year period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

12

Here, Zielinski was sentenced on May 6, 2014 and timely appealed on May 15, 2014. (Doc. No. 6-1, Exh. 5, 7.)  The state appellate court affirmed his conviction and sentence in a decision that was journalized on April 22, 2016.  (Doc. No. 6-1, Exh. 12.) Zielinski then had forty-five (45) days to appeal to the Supreme Court of Ohio, but failed to do so successfully.  *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i).  Thus, the Court finds Zielinski's conviction and sentence became "final" for purposes of § 2244(d)(1)(A) on June 6, 2016, forty five (45) days after the state appellate court issued its decision affirming his conviction and the time to file a timely notice of appeal with the Supreme Court of Ohio expired.  Accordingly, the Court finds the limitations period commenced on June 7, 2016 and, absent tolling, expired one year later on June 7, 2017.

As the statutory limitations period expired on June 7, 2017 and Zielinski did not file his habeas petition until July 27, 2017, the Court finds the Petition is over a month late and is untimely under § 2244(d)(1)(A).  Therefore, unless equitable or statutory tolling is appropriate, Zielinski's Petition should be dismissed as time-barred.

**D.      Tolling of the One-Year Limitation**

       a.  *Post-conviction filings/Collateral Review*

AEDPA allows for statutory tolling, which under proper circumstances, will extend the one-year statute of limitations.  AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)."  *Evans v. Chavis*, 546 U.S. 189, 191, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006); *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003). "The time that an application for state

post-conviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Id*.

Only "properly filed" applications for post-conviction relief or collateral review toll the statute of limitations, and "a state post-conviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 128 S. Ct. 2, 169 L.Ed.2d 329 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely"); *Monroe v. Jackson*, 2009 WL 73905 at *2 (S.D. Ohio Jan. 8, 2009).  A timely filed state post-conviction matter, however, cannot serve to toll a statute of limitations which has already expired before the motion was filed.  *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman*, 346 F.3d at 602 (citation omitted).  Further, if a state court ultimately denies a petition as untimely, that petition was neither properly filed nor pending and a petitioner would not be entitled to statutory tolling.  *See Monroe* at *2; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007).

A review of the record shows Zielinski made no filings between April 22, 2016 (the date the state appellate court opinion was journalized) and June 7, 2017 (the date the AEDPA statute of limitations expired.)  As discussed *supra*, Zielinski did attempt to file an appeal with the

14

Supreme Court of Ohio, but did not do so correctly.  (Doc. No. 7-1.)  He has not attempted to file a delayed appeal with the Supreme Court of Ohio as of the date of this Report and Recommendation.  There are no applications for collateral review or post conviction relief. Thus, as there are no "properly filed" applications for post-conviction relief or collateral review, tolling of the statute of limitations under § 2244(d)(2) is not appropriate.

### b.  Equitable Tolling

Zielinski argues he is entitled to equitable tolling because he did attempt timely file his appeal to the Supreme Court of Ohio.  (Doc. No. 7 at 6.)  He asserts his attempted filings "were impeded by the fact that the lower court failed to provide the *pro se* Petitioner with the requisite time-stamped copy of the court's decision being appealed, and therefore, his filing in this regard would not be accepted due to that error."  (Doc. No. 7 at 6.)  He maintains because his failure to meet the deadline to file an appeal with the Supreme Court of Ohio  is not "attributable to [his] error" he is "duly entitled to equitable tolling."  (*Id*. at 6.)

Respondent argues equitable tolling is not appropriate because "it is not credible that Zielinski was unable to obtain a copy of the time-stamped decision in the year after it was issued and thereafter file a delayed appeal."  (Doc. No. 6 at 12-13.)  He asserts Zielinski's "inaction in pursuing a delayed appeal raises doubts as to his diligence in pursuing his rights."  (*Id*. at 13.) Finally, Respondent notes "even an alleged failure of an attorney or the court to provide a defendant with timely notice of the Ohio Court of Appeals decision does not entitle petitioner to equitable tolling if he did not exercise due diligence in pursuing further relief, but instead sat on his rights."  (*Id.*)

The Supreme Court has held the AEDPA statute of limitations is subject to equitable tolling in appropriate circumstances. *Holland v. Florida,* 560 U.S. 631, 645 (2010). Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010). *See also Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 749 (6th Cir. 2011). However, the equitable tolling doctrine is granted by courts only "sparingly." *See Robertson*, 624 F.3d at 784. Moreover, "although 'the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run,' the petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir.2011)(quoting *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).

In order to be entitled to equitable tolling, a habeas petitioner must establish that (1) he has been pursuing his rights diligently; and, (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland,* 130 S.Ct. at 2565. *See also Hall*, 662 F.3d at 749; *Griffin*, 308 F.3d at 653. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum diligence." *Holland*, 130 S.Ct. at 2565. That being said, the Sixth Circuit has held that excessive delays in filing lack appropriate diligence. *See e.g. Keeling v. Warden*, 673 F.3d 452, 463–64 (6th Cir. 2012); *Vroman*, 346 F.3d at 605 (stating that a court should be "much less forgiving ... where the claimant failed to exercise due diligence in preserving his legal rights"); *Henson v. Warden, London Correctional Inst.*, 620 Fed. Appx. 417, 419 (6th Cir. 2015).

The Court finds Zielinski has failed to demonstrate he has been reasonably diligent in pursuing his rights.  As noted *supra*, the state appellate court affirmed Zielinski's conviction and sentence in a decision that was journalized on April 22, 2016.  (Doc. No. 6-1, Exh. 12.)  A copy of the state appellate court decision was mailed to his appellate counsel, Steven Casiere.  (Doc. No. 6-1, Exh. 14.)  Zielinski was aware the state appellate court had issued a decision, as he attempted to appeal this decision to the Supreme Court of Ohio.  (Doc. No. 7-1 at 1.)  However, in a letter dated May 16, 2016, the Supreme Court of Ohio informed Zielinski it had not accepted his appeal, as it did not include a "date-stamped copy of the court of appeals' opinion and judgment entry."  (*Id*.)  The Supreme Court of Ohio also provided Zielinski with information on how to correctly file an appeal and made him aware of the June 6, 2016 filing deadline.  (*Id*.)

This May 16, 2016 letter should have, in turn, prompted Zielinski to quickly request a copy of the state appellate court decision.  Rather, Zielinski again attempted to file an appeal with the Supreme Court of Ohio without attaching a complete date-stamped copy of his state appellate court decision.  (Doc. No. 7-1 at 3.)  It was not until after the June 6, 2016 filing deadline Zielinski requested a copy of his decision from the state appellate court.  (*See* Doc. No. 7-2 at 2.)  The state appellate court quickly obliged, providing him with a copy of the decision within a week of his request.  (Doc. No. 7-2 at 2.)

However, once Zeilinski had obtained a copy of this decision, he chose a course of inaction for over a year.  He did not file a delayed appeal with the Supreme Court of Ohio and has not offered any explanation for his failure to do so.   Moreover, in respect to his federal habeas claims, Zielinski waited over a month after the June 7, 2017 AEDPA deadline to file his Petition. While Zielinski has provided some explanation for his failure to timely appeal with the

17

Supreme Court of Ohio, he has not provided any explanation as to why he was unable to meet the AEDPA deadline for his federal habeas petition.  *See Miller v. Cason*, 49 Fed. App'x 495, 497 (6th Cir. Sept. 27, 2002)("Although these alleged actions may have interfered with Miller's direct appeal in state court . . . Miller has failed to explain how the actions prevented him from filing his federal habeas corpus petition.").

Thus, and for all the reasons set forth above, the Court finds Zielinski has failed to demonstrate he has been reasonably diligent in pursuing his rights.  *See e.g., Vroman*, 346 F.3d at 605 (finding petitioner's decision to proceed solely to the Ohio Supreme Court rather than filing his federal habeas petition and protecting his federal constitutional rights shows a lack of diligence); *Robinson*, 424 Fed. App'x at 442 ("[t]his Court has never granted equitable tolling to a petitioner who sat on his rights for a year and a half, and we decline to do so here"); *Dudley v. Clipper*, 2014 WL 6896080 at * 8-9 (N.D. Ohio Dec. 8, 2014).

The Court also finds Zielinski is unable to show some extraordinary circumstances stood in the way of his filing a timely habeas petition. *See Holland,* 130 S.Ct. at 2565.  Here, Zielinski alleges he did not have a copy of the state appellate court decision in order to timely file an appeal with the Supreme Court of Ohio, arguing this constitutes "extraordinary circumstances." (Doc. No. 7 at 7.)  However, he does not explain how this alleged lack of access to the state appellate court decision prevented him from timely filing his federal habeas petition.  When filing a federal habeas petition, a petitioner is not required to submit a copy of the state appellate court decision.  *See* 28 U.S.C. §2254, Rules Governing Section 2254 Cases, R. 2(c), R. 3(a). Moreover, Zielinski had  a copy of the state appellate court decision in his possession prior to the AEDPA deadline.  (*See* Doc. No. 7-2 at 2.)  Thus, it does not appear there were any

18

circumstances, let alone "extraordinary circumstances," preventing Zielinski from timely filing his habeas petition.  While Zielinski missed the filing deadline by about a month, "courts have held that '[a]bsent compelling equitable considerations, a court should not extend limitations by even a single day.'" *Gorospe,* 2011 WL 4431091 at *8 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 561 (6th Cir. 2000).).

The Court also rejects any suggestion Zielinski's *pro se* status constitutes "extraordinary circumstances" warranting equitable tolling.  The Sixth Circuit has repeatedly held that "ignorance of the law alone is not sufficient to warrant equitable tolling."  *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991).  *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004); *Allen v. Bell*, 250 Fed. Appx. 713, 716 (6th Cir. 2007); *Taylor v. Palmer*, 623 Fed. Appx. 783, 789 (6th Cir. 2015).  *See also Johnson v. United States*, 544 U.S. 295, 311, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005) ("[w]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness"); *Patrick v. Bunting*, 2015 WL 10488878 at * 9 (N.D. Ohio Dec. 29, 2015).  Moreover, courts within this Circuit have found a petitioner's *pro se* status, lack of legal training, poor education, and/or limited law-library access, standing alone, are similarly insufficient.  *See e.g., Hall*, 662 F.3d at 751 (petitioner's *pro se* status, limited law-library access and lack of access to trial transcript were not sufficient to warrant equitable tolling); *Keeling*, 673 F.3d at 464 ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing").

19

In sum, because Zielinski failed to exercise his rights diligently and no extraordinary circumstance prevented him from filing his habeas Petition, the Court finds equitable tolling is not warranted in this case.

**E.    Actual Innocence**

In *McQuiggin v. Perkins*, 569 U.S. 383, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013), the United States Supreme Court held that actual innocence, if proven, may overcome the expiration of AEDPA's one-year statute of limitations.  The Court noted that a claim of actual innocence is not a request for equitable tolling but, rather, a request for an equitable exception to § 2244(d)(1).  *Id*. at 1931.

For the actual innocence exception to apply, a petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  The Supreme Court explained, however, that "tenable actual-innocence gateway pleas are rare" and "'[a] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *McQuiggin*, 133 S.Ct. at 1928 (quoting *Schlup*, 513 U.S. at 329).  In making this assessment, "'the timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence."  *Id*. (quoting *Schlup*, 513 U.S. at 332).

Here, Zielinski does not raise an argument for the actual innocence exception.  He does not identify any new, reliable evidence of his actual innocence; i.e., exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence that was not available to him at the time of his underlying criminal proceedings.  *See Schlup*, 513 U.S. at 324.

Accordingly, and for all the reasons set forth above, the Court finds Zielinski has not demonstrated he is entitled to the actual innocence exception.  Thus, the Court finds the instant Petition is time-barred under §2244(d)(1).

### IV.  Law and Argument – Exhaustion

Respondent argues that even if Zielinski's claims were not time-barred, they would be barred due to Zielinski's failure to exhaust them with the state courts.  (Doc. No. 6 at 16.)  Respondent notes Zielinski has "failed to take a further appeal to the Ohio Supreme Court" and thus, "still has the remedy of a delayed appeal to the Ohio Supreme Court to exhaust his habeas claims."  (*Id*. at 15.)  Respondent maintains while "it is unlikely the Ohio Supreme Court will entertain a motion for a delayed appeal at this late juncture, the federal court should still provide the state court the opportunity to exercise its discretion in favor of the availability of the remedy."  (*Id*. at 16.)   Lastly, Respondent asserts it would not be appropriate to stay and abey Zielinski's petition because it is not a "mixed petition" and Zielinski has not "shown that his claims are potentially meritorious."  (*Id.* at 16-17.)  Zielinski does not present any arguments regarding exhaustion in his response.  (*See* Doc. No. 7.)

Before a state prisoner may seek a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254, he must exhaust his state court remedies by fairly presenting all his constitutional claims to the highest state court and to all appropriate state courts prior to that.  *See* 28 U.S.C. § § 2254(b), (c); *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir.1987); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir.1987).  To fulfill the exhaustion requirement, "state prisoners must give the state courts one

21

full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which, in Ohio, includes discretionary review by the state's highest court, the Ohio Supreme Court.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985).  In order to fairly present habeas claims to the state courts, such claims must be presented at the first available opportunity.  *Rust v. Zent*, 17 F.3d 155, 160–61 (6th Cir. 1994).  A habeas petitioner bears the burden of demonstrating he has properly and fully exhausted his available state court remedies with respect to the claims he seeks to present for federal habeas review.  *See Caver v. Straub,* 349 F.3d 340, 345 (6th Cir. 2003); *Rust,* 17 F.3d at 160; *Prather v. Rees*, 822 F.2d 1418, 1420 n. 3 (6th Cir. 1987).

If a federal habeas petitioner has not fairly presented his claims through the requisite levels of state appellate review to the state's highest court, but still has an avenue open to him in the state courts by which he may present his federal constitutional claims, his petition may be dismissed without prejudice, or administratively stayed, pending his exhaustion of the available state remedy.  *See* 28 U.S.C. § 2254(c); *see also Duncan v. Walker*, 533 U.S. 167, 182-84, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (Stevens, J., concurring); *Griffin v. Rogers*, 308 F.3d 647, 652 & n. 1 (6th Cir. 2002); *cf. Rhines v. Weber*, 544 U.S. 269, 276-77, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005).  However, the Supreme Court has cautioned the "stay and abeyance procedure should be available only in limited circumstances." *Rhines v. Weber*, 544 U.S. 269, 277 (2005).  This procedure is only appropriate when: (1) there is good cause for failure to exhaust in state court; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication the petitioner engaged in intentionally dilatory litigation tactics.  *Id*. at 277–78.

22

Here, it is clear Zielinski has not fairly presented his federal habeas claims through the requisite levels of state appellate review to the Ohio Supreme Court.  Zielinski's sentence was journalized on May 6, 2014, and he filed his direct appeal in the state appellate court on May 15 2014.[4] (Doc. No. 6-1, Exhs. 5, 7.)  The state appellate court affirmed his conviction and sentence in a decision that was journalized on April 22, 2016.  (Doc. No. 6-1, Exh. 12.) Zielinski then had forty-five (45) days to appeal to the Supreme Court of Ohio, but failed to do so successfully. Zielinski continues to have the option to filed a delayed appeal with the Supreme Court of Ohio. *See* Ohio S. Ct. Prac. R. 7.01(A)(4)(a).  As Zielinski's direct appeal of right is not yet completed, he has "failed to give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 842.  Thus, Zielinski's habeas claims are clearly unexhausted.

The Court further notes while Zielinski raised Grounds One, Two, and Three of his federal habeas Petition to the state appellate court, he has not, at any point, raised Ground Four at the state court level.  (*See* Doc. No. 1 at 2, 5, 8, 9, 14.)  Respondent has not addressed this discrepancy.  (*See* Doc. No. 6.)  Moreover, it appears Respondent was not aware of Zielinski's Fourth Ground for Relief. (Doc. No. 6 at 6-8.)  Regardless, Ground Four is also unexhausted, as he has not presented this claim to the state court.

The Court agrees with Respondent that stay and abeyance is not appropriate under *Rhines, supra*.[5]  As an initial matter, Zielinski has not requested his Petition be stayed. Even

---

[4]     The Court notes Zielinski only raised Grounds One, Two, and Three of his federal habeas Petition in his appeal to the state appellate court.  (Doc. No. 6-1, Exh. 9.)

[5]     While the Court agrees with Respondent that a stay and abeyance is not appropriate, it does not necessarily agree with Respondent's assertion "the *Rhines* stay does not apply here because Zielinski's petition contains only unexhausted

23

assuming, however, that Zielinski's *pro se* filings could be interpreted as requesting a stay, the

Court finds stay and abeyance would not be appropriate under the circumstances presented.  In

*Rhines*, the Supreme Court cautioned that "stay and abeyance should be available only in limited

circumstances," because it "has the potential to undermine . . . AEDPA's objective of

encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings."

*Id.* at 277.  Accordingly, the Supreme Court determined stay and abeyance is appropriate only

where the petitioner can show (1) good cause for his failure to exhaust; (2) his unexhausted

claims are not "plainly meritless;" and (3) there is no indication the petitioner engaged in

"intentionally dilatory litigation tactics."  *Id.* at 277-78; *see also Wagner v. Smith*, 581 F.3d 410,

419 (6th Cir. 2009).  Here, Zielinski has failed to demonstrate good cause for his failure to

exhaust his claims in the state courts.  *Rhines*, 544 U.S. at 278.   In fact, Zielinski has provided

no explanation for his failure to file a delayed appeal with the Supreme Court of Ohio, despite

the fact this option continues to be available to him.  *See El v. Miller*, 2012 WL 3067365 at *6

(N.D. Ohio June 29, 2012) (finding stay and abeyance is not appropriate where petitioner failed

to exhaust his claims where he still had the available state remedy of a delayed appeal.).

---

claims and therefore is not a mixed petition covered by *Rhines*."  (Doc. No. 6 at
16.)  The Sixth Circuit has recently acknowledged that other circuits have found
the *Rhines* stay and abeyance procedure "appropriate for petitions containing
solely unexhausted claims."  *Hickey v. Hoffner,* 701 Fed. App'x 422, 426, n. 5
(6th Cir. June 30, 2017).  Courts within this Circuit have granted stays where a
habeas petition contained only unexhausted claims.  *See Collins v. Warden*, Ohio
Rehabilitation Correction Center, 2018 WL 1276895 at *3-5 (S.D. Ohio Jan. 26,
2018) and *Durant v. Skipper,* 2018 WL 2009556 at *3 (E.D. Mich. Apr. 30,
2018)("the mere fact that all of petitioner's claims are unexhausted does not
prevent this Court from holding his petition in abeyance.").  However, this Court
declines to decide whether it can grant a stay on a petition with solely
unexhausted claims, as Zielinski is unable to establish good cause for his failure
to his exhaust his claims in state court.

Accordingly, for all the reasons set forth above, it is recommended Zielinski's Petition be dismissed because his habeas claims are not only time-barred, but also unexhausted.

### V. Conclusion

For the foregoing reasons, the Court find the instant Petition is time-barred under § 2244(d)(1). Moreover, his habeas claims are unexhausted and a stay and abeyance is not appropriate. It is recommended Respondent's Motion be GRANTED and the Petition be DISMISSED.


           *s/ Jonathan D. Greenberg*
           Jonathan D. Greenberg
           United States Magistrate Judge

Date: June 12, 2018


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

25